IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ATTIA D. S.,[1]         )
                        )
      **Plaintiff,**   )
                        )         CIVIL ACTION
v.                      )
                        )         No. 23-1262-JWL
MARTIN O'MALLEY,[2]     )
**Commissioner of Social Security,** )
                        )
      **Defendant.**   )
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) explanation of her evaluation of Plaintiff's allegations of symptoms, the court ORDERS that the Commissioner's decision shall be REVERSED and that judgment shall be entered

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

**I.     Background**

Plaintiff protectively filed applications for SSDI and SSI benefits on August 16, 2021.  (R. 79, 254-65).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ failed properly to evaluate her allegations of disabling fatigue.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

3

Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.   Discussion

Plaintiff points out Social Security Ruling (SSR) 16-3p requires that a Social Security "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, 2016 WL 1119029, at *9.  She argues the ALJ found Plaintiff's "reported fatigue and resultant limitations were not consistent with the normal findings on examination, lack of treatment for fatigue, and her activities of daily

living." (Pl. Br. 10) (citing R.26).  She argues the ALJ never explained how normal examination findings were contrary to Plaintiff's reports of fatigue, the lack of treatment for fatigue and what more could or should have been done to treat her fatigue, or how Plaintiff's activities of daily living—as reported by Plaintiff—are inconsistent with disabling fatigue.  Id. 11-13.  Plaintiff argues, "the record provided ample support for [Plaintiff's] reported fatigue." Id. 13 (providing examples at R. 13-15).

The Commissioner argues the ALJ provided a reasonable evaluation of Plaintiff's RFC which accounted for her allegations of fatigue.  He argues she reasonably found Plaintiff's allegations of disabling symptoms were inconsistent with other evidence.  He argues Plaintiff's statements of symptoms alone cannot establish disability and the ALJ's evaluation of symptoms is entitled to great deference, are the province of the factfinder, and should not be overturned when supported by substantial evidence. (Comm'r Br. 6).  He argues the ALJ considered the evidence that supported Plaintiff's allegations of symptoms and the evidence that indicated they were not as severe as alleged, and in such a situation she reasonably did her duty to resolve the conflict.  Id. 7-8.

He argues the ALJ discussed the medical evidence of which some was inconsistent with Plaintiff's reported symptoms and noted there was no recurrence of Plaintiff's cancer, and the ALJ found Plaintiff was not treated for fatigue.  He argues, "Based on the overall record, the ALJ reasonably found that Plaintiff's complaints of debilitating fatigue related to her history of cancer were not entirely consistent with the medical evidence." Id. 8-9 (citing R. 23-25).  He argues the ALJ considered the efficacy of treatment, noting Plaintiff's report that medication was helping with her sleep, "that on medication her

5

sleep and energy level were 'good,' her energy improved with more restful sleep, and she was 'doing well,'" and other similar statements to treatment providers about improved sleep and energy levels. (Comm'r Br. 9) (quoting R. 511-13 and citing R. 495, 503). He argues, "the ALJ considered Plaintiff's activities of daily living," noting the tasks Plaintiff performs and that in 2022 Plaintiff was working 2 hours a day four days a week. Id. 10. He argues, "Although not substantial gainful activity, it was reasonable for the ALJ to consider Plaintiff's ability to work part-time as a cashier during the relevant period when assessing her complaints of debilitating fatigue." Id. He concludes, "Thus, contrary to Plaintiff's argument, the ALJ articulated multiple legally sound reasons for finding that Plaintiff's fatigue and low energy were not as debilitating as she alleged and linked those reasons to substantial evidence in the record in compliance with 20 C.F.R. § 404.1529 and SSR 16-3p." Id. 11 (citing R. 23-26).

**A.	The ALJ's Findings Regarding Plaintiff's Allegations of Symptoms**

The ALJ stated she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. 22). She explained the Commissioner's process for evaluating a claimant's allegations of symptoms, id., and stated those symptoms Plaintiff alleges result from her endometrial, uterine, and thyroid cancers; anxiety; and obesity—"Inability to stand and walk for long periods; Fatigue; Issues with concentration; Lifting limitations; [and] Anxiety around people." Id. 23 ("bullets" omitted, punctuation added). She found Plaintiff's

6

> Medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 23).

The ALJ summarized the medical records of Plaintiff's treatment history, noting that the records reflect mentions of ongoing issues of fatigue, decreased concentration, issues with sleep, difficulty standing and walking, concentration problems, low energy, chronic fatigue, shortness of breath with walking 30 feet, leg fatigue, she hates interacting with the public for fear of judgment of how she is viewed by them, and she struggles with energy level. Id. 23-25. The ALJ summarized his consideration of Plaintiff's endometrial cancer, noting Plaintiff alleges fatigue from her cancer and has reported it to her providers, but is not treated for fatigue, examinations have not shown significant abnormalities caused by her cancer, and concluded, "The record does not reflect significant limitations from this impairment." Id. 25. She next summarized her consideration of thyroid cancer, beginning with, "the record reflects no significant limitations from the impairment." Id. She concluded, "Examinations have not shown any abnormalities from the impairment. She has endorsed fatigue from the condition. Overall, the record is not suggestive of her having significant limitations from these impairments." Id. She discussed Cowden's Disease, noting Plaintiff's cancer is in remission, Plaintiff reported her skin lesions did not affect her ability to work and concluded, "The record is not suggestive of her having disabling limitations from this impairment." Id. She discussed Plaintiff's obesity, including a Body Mass Index in

7

excess of 50, and that her postural limits were accounted for in the RFC assessed and concluded her "obesity imposes limitations that would restrict her from performing work at a greater exertional level." (R. 25).

Finally, the ALJ discussed Plaintiff's mental health treatment. She acknowledged a diagnosis of generalized anxiety and noted findings in the treatment records. Id. 26. She found Plaintiff "has not exhibited any evidence of panic attacks or any suicidal ideation." Id. She concluded,

> The claimant has undergone medication management and therapy. She has not required any type of inpatient psychiatric care for a mental health crisis. The record does not reveal that the claimant's anxiety has resulted in marked or extreme limitations. Further, the claimant has noted improvement with medication.

Id.

The ALJ discussed Plaintiff's allegations of symptoms before evaluating the prior administrative medical findings and the medical opinion in the record.

> The claimant testified she had no reoccurrence of cancer. She also noted no additional physical impairments other than fatigue and lack of energy. The claimant stated that she did spend a large portion of the day lying down. She continues to get hematomas from the Cowden's Disease, but they are not painful. The claimant continued to endorse anxiety if she left the house or had visitors. The claimant continues to utilize Prozac which she noted helped her get through day to day. She noted she was able to attend doctor's appointments despite allegations of anxiety.
>
> Despite her allegations of disabling limitations, the record indicates that the claimant is able to engage in various activities of daily living. The claimant can drive. She is able to go shopping and perform household chores including dishes and vacuuming. She can care for hygiene needs. The claimant can handle her personal finances. Overall, the description of her activities are [sic] essentially normal. Her activities are not limited to the extent one would expect, given the complaints of anxiety. Although the claimant may not be able to engage in all of the activities that she did in the

8

past and it may take her longer to perform tasks, she is more active than would be expected if all allegations were consistent with the record.

(R. 26). After evaluating the opinion evidence, the ALJ provided a final discussion of Plaintiff's allegations of symptoms:

Although the claimant's allegations of total disability are not fully consistent, the undersigned finds the claimant's impairments require a reduction of the residual functional capacity. The undersigned has determined the claimant's residual functional capacity based on the entire record, including the objective medical findings in the record, the clinical signs and findings on examination and the claimant's testimony. Weighing all factors, the undersigned finds that the claimant's subjective complaint did not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision.

Id. 28.

### B.     Standard for Evaluating Plaintiff's Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529, 416.929).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. §§ 404.1529, 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on May 3, 2023, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

symptoms; measures the plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### C. Analysis

While the court recognizes SSR 16-3p requires that a Social Security "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms," 2016 WL 1119029, at *9, it does not agree with the line of cases from this district cited by Plaintiff and tending to suggest that the decision must provide a specific reason to discount each symptom alleged by the claimant. Were that the case, there would be no reason for the ALJ or the court to consider "the record as a whole." Symptoms such as fatigue and pain, particularly, are subjective and cannot be measured by objective tests. Therefore, inconsistencies between the record evidence and other allegations of symptoms may be sufficient to discount all plaintiff's allegations of symptoms. But, in this case the ALJ simply has not provided specific reasons, supported by record evidence, and clearly articulated to demonstrate a basis to discount Plaintiff's allegations of disabling symptoms.

The problem is that the decision at issue does not point to specific record evidence demonstrating inconsistency with Plaintiff's alleged symptoms. Rather, over and over again the ALJ presents the record evidence which shows Plaintiff's alleged disabling symptoms with regard to her treatment record and to each of her medically determinable

11

impairments and then states her conclusion that the record evidence does not reflect significant or disabling limitations from that impairment. (R. 25, 26). The Commissioner's Brief comes closest to providing a reason to discount Plaintiff's allegations when it cites to reports in Plaintiff's mental health treatment records that, after being prescribed Trazodone, she was sleeping well, and multiple reports that sleep and energy levels improved, were better, and were good, or that she was doing well. (Comm'r Br. 9). Leaving aside the fact that a patient's responses to questions about sleep and energy levels in the context of mental health treatment may not mean the same in the context of physical treatment, that evidence does not demonstrate that fatigue as a result of cancer and its treatment and of morbid obesity is ameliorated by more or improved sleep to the same extent as fatigue resulting from interrupted sleep or a lack of sleep in an individual who has never had cancer and is not morbidly obese. Moreover, improved energy levels for a person who is working two hours a day, four days a week, do not demonstrate that the individual will now be able to work at the level of substantial gainful activity eight hours a day, five days a week.

Returning to consideration of the ALJ's discussion in her decision, when discussing Plaintiff's endometrial cancer, the ALJ noted Plaintiff, "alleges that she has fatigue from her cancer and has reported fatigue to her providers. However, she is not treated for fatigue. Furthermore, her examinations, have not shown significant abnormalities caused by her cancer." (R. 26). Likewise, when discussing Plaintiff's thyroid cancer, the ALJ stated, "Examinations have not shown any abnormalities from

the impairment.  She has endorsed fatigue from the condition.  Overall, the record is not suggestive of her having significant limitations from these impairments." Id.

The ALJ acknowledged Plaintiff informed her healthcare providers of her fatigue. (R. 26) (the records demonstrate these reports included her oncologist (R. 599, 600, 717)).  Thus, it is unclear what the ALJ means in finding Plaintiff is not treated for fatigue.  Does she suggest that Plaintiff's physicians failed to treat her for fatigue of which they were aware, and which even lay persons such as this court and the ALJ know are common results of cancer and its treatment?  Does she suggest that the treatment records should have contained some specific detail of response to the reports of fatigue?  Does she suggest there is a specific treatment for severe fatigue resulting from cancer and its treatment which would have been used had Plaintiff's fatigue been disabling (preventing her from performing substantial gainful activity eight hours a day, five days a week, or some equivalent schedule)?  She said nothing to support her finding other than the written insinuation that more should have been done.  This is a conclusion in the guise of a finding, long prohibited in the Tenth Circuit.  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

Moreover, the mere repetition of the finding that the record does not show significant limitations from two types of cancer (in remission) Cowden's Disease (tending to increase the risk of developing cancer), and obesity (with a BMI in excess of 50) all of which tend to increase the effects of fatigue, does not demonstrate that Plaintiff's fatigue is not disabling, because fatigue, like pain, cannot be measured by

13

some objective medical test.  Finally, the ALJ has not pointed to significant inconsistencies in the record with regard to Plaintiff's allegation of other symptoms—inability to stand and walk for long periods, issues with concentration, lifting limitations, and anxiety around people.  Rather, she seems to have accepted and accommodated them into the RFC assessed.   She found Plaintiff "can lift and carry [only] 10 pounds occasionally and 5 pounds frequently; stand/walk [only] 4 hours out of an 8-hour workday; … is limited to a low stress work environment with no production rate pace requirements; and would be off task 10% of the time due to fatigue and mental health symptoms.  The claimant should also have no interaction with the public and occasionally interaction [sic] with co-workers and supervisors."  (R. 22) (finding no. 5, bold omitted).

The ALJ cites no inconsistencies between Plaintiff's allegations and the record evidence justifying discounting Plaintiff's fatigue to merely a mental distraction causing her to be off task 10% of the time in conjunction with her mental issues with concentration and anxiety.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this decision.

Dated October 2, 2024, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**